IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANN MARIE PERESOLAK**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:12cv921 |
| ) | **Electronic Filing** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security**, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

September 19, 2013

## I.   INTRODUCTION

Plaintiff, Ann Marie Peresolak ("Plaintiff" or "Peresolak"), initiated this action under 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security, Michael J. Astrue (the "Commissioner" or "Astrue") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-434. Plaintiff protectively filed an application for DIB on July 22, 2009, alleging disability since January 1, 1997, due to multiple sclerosis. R. 10, 83-84, 103). The application was initially denied on October 13, 2009 and Plaintiff timely requested a hearing. R. 10.

On November 19, 2010, a hearing was held before Administrative Law Judge William E. Kenworthy (the "ALJ"). *Id.* The ALJ issued a written decision on November 19, 2010, finding that Plaintiff did not have a severe impairment on or before December 31, 1998, the date her insured status expired. R. 10-15. Plaintiff timely requested a review of the ALJ's decision to the Appeals Council, which was denied May 3, 2012, making the ALJ's decision the final decision for judicial review pursuant to 42 U.S.C. § 405. R. 1-3.

II.  STATEMENT OF THE CASE

Plaintiff was born on July 29, 1964, which made her thirty-four years old at the time her insured status expired. R. 40.  Prior to filing for DIB, Plaintiff worked as a clerical supervisor for a telemarketing firm and as a patient care assistant. R. 104.  She stopped working in December of 1993 due to the birth of her daughter. R. 103.

Plaintiff testified that her health problems began in February of 1997, after a flight from Kansas to Pittsburgh. R. 148-152. She complained of dizziness, confusion, poor balance, blurred vision, headaches, fatigue, numbness, and difficulty with memory and writing. R. 113-118.  On February 4, 1997, Plaintiff was examined by her family physician, Dr. James A. Solan ("Dr. Solan"), who diagnosed her with vertigo. R. 181-182.

Plaintiff testified that on October 5, 1999, she hit her head on a pipe in a neighbor's basement, and began suffering headaches. R. 136.  Dr. Solan diagnosed her with a contused skull with headache, and prescribed Tylenol.  R.136.  On December 27, 1999, Plaintiff complained of a one-week history of dizziness, but also stated that  her prior episode was totally cleared.  R. 183.

On January 6, 2000, Plaintiff went to see Richard A. Weisman, M.D. ("Dr. Weisman"), a neurologist, because of her of dizziness, and an MRI was prescribed.  R. 154.  In a January 13, 2000, report to Dr. Solan, Dr. Weisman stated that the brain scan revealed abnormalities with areas of abnormal signal in the right cerebral and right cerebellar hemispheres and in the left temporal lope. R. 147-150, 155.  Dr. Weisman also stated that Plaintiff's MRI results were suggestive of multiple sclerosis, noting that Plaintiff's neurological examination was unimpressive except for somewhat brief reflexes, she had normal tone and no Babinski signs. R. 155.  Dr. Weisman also reported "absolutely" no abnormal cranial nerve findings, optic nerve pallor, weakness or ataxia. *Id.*

2

Plaintiff returned to Dr. Weisman on February 10, 2000, and her examination was normal. R. 151. Plaintiff was experiencing no dizziness, but had some mild headaches that were relieved with Tylenol. *Id.* Dr. Weisman indicated that Plaintiff's symptoms were most suggestive of acute multiple sclerosis, but he performed a lumbar puncture in order to complete the evaluation. *Id.*

Plaintiff returned to Dr. Weisman on March 6, 2000, for a follow-up visit. R. 150. Based upon the testing results, Dr. Weisman diagnosed Plaintiff with multiple sclerosis. *Id.* Plaintiff's neurological examination was positive for fast reflexes, but was otherwise normal. *Id.* Though Plaintiff continued to be completely asymptomatic, Dr. Weisman believed it would be appropriate to start Plaintiff on Avonex, noting that "sooner or later she will develop significant neurological symptoms and signs." *Id.* Plaintiff's diagnosis was confirmed by Dr. Rock Heyman, a neurologist and director of the Multiple Sclerosis Center at UMPC, and by Dr. L. Dade Lansford. R. 147-149.

**III.    STANDARD OF REVIEW**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable

3

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing

> with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

### IV.   DISCUSSION

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505.

In order to receive benefits under Title II of the Act, Plaintiff must show that she became disabled before the expiration of her insured status. 42 U.S.C. § 423 (a) (1) (A). Because Plaintiff's insured status expired on December 31, 1998, she was required to demonstrate that she became disabled before that date. *See Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990); *Lewis v. Astrue*, 2012 U.S. Dist. LEXIS 51483 at *9 n. 6 (E.D. Pa. Apr. 11, 2012). The Plaintiff bears the initial burden of proving disability. 42 U.S.C. § 423 (d)(5).

At step two[1] of the sequential evaluation process, the ALJ found that Plaintiff's multiple sclerosis symptoms were not severe as of the date of her last insured, December 31, 1998. An impairment is not severe if it "does not significantly limit [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  Basic work activities  are abilities and aptitudes necessary to do most jobs, including:

1.  Physical functions such as walking, standing, sitting, lifting pushing, pulling, reaching, carrying or handling;

2.  Capacities for seeing, hearing and speaking;

3.  Understanding, carrying out, and remembering simple instructions;

4.  Use of judgment;

5.  Responding appropriately to supervision, co-workers, and usual work situations; and

6.  Dealing with changes in a routine work setting.

*See* SSR-85-28.  The Court agrees that there was no evidence in the record that Plaintiff had an impairment, or a combination of impairments, that limited her ability to perform any of the above activities at the time of her alleged onset of disability, January 1, 1997.

Plaintiff argues that the ALJ failed to give proper weight to the opinion of her treating physician, in this instance Dr. Solan.  The only relevant medical evidence prior to the date Plaintiff's insured status expired, however, occurred in 1997 when she complained to Dr. Solan of "feeling funny" after a flight, and he diagnosed her with vertigo.  R. 181-182.

---

[1]   Absent a "medically determinable physical or mental impairment," an individual must be found not disabled at step two and "[n]o symptom or combination of symptoms can be the basis for a finding of disability . . . unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p, 1996 SSR LEXIS 11 at *1, 1996 WL 374187, at *1 (July 2, 1996).

On October 5, 1999, approximately nine (9) months after the expiration of her insured status, Plaintiff hit her head on a pipe in a neighbor's basement, and began suffering headaches. R. 136. Dr. Solan diagnosed her with a contused skull with headache, and prescribed Tylenol. R.136. On December 27, 1999, Plaintiff complained of a one-week history of dizziness, but also stated that her prior episode was totally cleared. R. 183. It was not until January of 2000, that Dr. Weisman found that Plaintiff's MRI results were suggestive of multiple sclerosis[2]. R. 155. Moreover, none of Plaintiff's treating physicians suggest that Plaintiff was unable, either mentally or physically, to perform basic work activities.

In support of her argument, Plaintiff directs this Court to Dr. Solan's letter dated July 29, 2010, which in relevant part reads:

> Ann Marie Peresolak has been a patient of my practice for over twenty years. She was diagnosed with multiple sclerosis in 2000. In retrospect, her symptoms began in January of 1997. . . Since MS is a disease that is hard to diagnose because the symptoms come and go, she had numerous exacerbations before her 2000 diagnosis. At her last office visit in April 2010 her MS remains well controlled with the continuation of her current therapy regimen.

R. 189. Plaintiff argues that the ALJ erred in not giving "Dr. Solan's opinion great probative value." The Court disagrees.

Generally, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). In this instance, however, the ALJ was justified in giving little weight to Dr. Solan's medical evidence post-dating the expiration of Plaintiff's insured status. Though such evidence may be relevant to the issue regarding Plaintiff's alleged disability prior to the

---

[2] Tellingly, when Dr. Weisman diagnosed Plaintiff with multiple sclerosis in March of 2000, he stated that she was completely asymptomatic. R. 150

expiration of her insured status, there is no justification in the record to accord Dr. Solan's opinion substantial or controlling weight.

Many courts have recognized, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the [claimant's] pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Such evidence "may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000). However, subsequent medical evidence or a "retrospective diagnosis" may be considered only if it is "corroborated by . . . evidence relating back to the claimed period of disability." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 547 (3d Cir. 2003); *see also Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Moreover, in considering such subsequent medical evidence, one must keep in mind that "[i]t is the disability, and not just the impairment, that must have existed before the [claimant's] insured status expired." *Kelly v. Chater*, 1997 U.S. App. LEXIS 3719 at *3 (2d Cir. Feb. 27, 1997); *see also Deblois v. Secretary of Health & Human Servs.*, 686 F.2d 76, 79 (1st Cir. 1982) (explaining that "[i]t is not sufficient for [claimant] to establish that his mental impairment had its roots prior to [his date last insured]," and that he must establish that his "impairment was of a disabling level of severity as of that date").

Clearly, Dr. Solan's letter has little probative value with regard to the issue of Plaintiff's disability under the Act prior to the expiration of her insured status. Accordingly, the Court finds that there is substantial evidence supporting the ALJ's determination that Plaintiff did not have a severe impairment on or before December 31, 1998.

Plaintiff also contends the ALJ erred in failing to include a residual functional capacity ("RFD") assessment as required by Social Security Ruling 96-8p. An RFD is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work

setting on a regular and continuing basis. *Adams v. Barnhart*, 2005 U.S. Dist. LEXIS 10464 at *19 (E.D. Pa. 2005); *see also* 20 C.F.R. §§ 404.1545, 416.945. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. SSR 96-8p.

    The assessment of a claimant's RFD, however, occurs prior to steps four and five of the Social Security Administration's five-step process for evaluating whether a claimant is disabled. *See Breslin v. Comm'r of Soc. Sec.*, 509 Fed. Appx. 149, 153 (3d Cir. N.J. 2013). The ALJ in this instance made his evaluation at step two of the evaluation sequence, therefore he was not required to assess Plaintiff's RFD.

V.    CONCLUSION

    Based on the foregoing, Defendant's Motion for Summary Judgment will be granted. Plaintiff's Motion for Summary Judgment will be denied. The decision of the ALJ is affirmed. An appropriate Order follows.

s/David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:    Todd A. Spivak, Esquire
      Michael Colville, AUSA

      (*Via CM/ECF Electronic Mail*)